Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9297 | **DATE** | 8/29/2002 |
| **CASE TITLE** | SHAWN J. VARRIN vs. QUEEN'S UNIVERSITY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held and continued to 9/26/02 at 9:00 a.m. Plaintiff granted leave to file amended complaint. Answer to be filed by 9/19/02. Enter Memorandum Opinion And Order. Queen's University's suit in Canada is gratuitously duplicative. Accordingly, plaintiff's motion to enjoin defendant Queen's University from pursuing collateral proceedings is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | SEP 03 2002 |
| | Notified counsel by telephone. | | date docketed |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials |
| | Copy to judge/magistrate judge. | 02 AUG 30 PM 2:53 | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SEP 0 3 2002

| | |
|---|---|
| SHAWN J. VARRIN, | ) |
| Plaintiff, | ) |
| v. | ) |
| QUEEN"S UNIVERSITY; PENTECH PHARMACEUTICALS, INC.; ABBOTT LABORATORIES; TAKEDA CHEMICAL INDUSTRIES, LTD.; and TAP PHARMACEUTICALS, INC., | ) No. 01 C 9297<br>)<br>) Judge John W. Darrah |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Shawn J. Varrin ("Varrin"), filed suit against Defendants, seeking an order that the Director of the United States Patent and Trademark Office correct inventorship of certain United States patents by adding Varrin as a joint inventor or deleting incorrectly named inventors and adding Varrin as the sole inventor of certain patents. Varrin also seeks a constructive trust on any monies received by any Defendants which should have been paid to him due to his status as inventor. Presently before the Court is Varrin's Motion to Enjoin Defendant Queen's University From Pursuing Collateral Proceedings.

## BACKGROUND

Varrin is a resident of Ontario Canada. Queen's University is a non-for-profit corporation operating and existing under the laws of Canada with its principal place of business in Kingston, Canada, province of Ontario.

United States Letters Patent 5,770,606 ("606 Patent"), entitled "Dosage Forms and Method for Ameliorating Male Erectile Dysfunction," was issued on June 23, 1998. The 606 Patent

identifies Ragab El-Rashidy, Jeremy P.W. Heaton, Alvaro Morales, and Michael A. Adams as joint inventors. United States Letters Patent 5, 985,889 ("889 Patent"), entitled "Dosage Forms and Method for Ameliorating Male Erectile Dysfunction," was issued on November 16, 1999. The 889 Patent identifies Ragab El-Rashidy, Jeremy P.W. Heaton, Alvaro Morales, and Michael A. Adams as joint inventors. Queen's University and Pentech Pharmaceuticals have exclusively licensed the 606 and 889 Patents in the United States to Tap Pharmaceuticals, which is a joint venture formed by Abbott Laboratories and Takeda Chemical Industries.

Varrin alleges, in his complaint filed on December 5, 2001, that he is at least a joint inventor of the subject matter of one or more of the claims of each of the 606 and 889 Patents because he contributed in some significant manner to the conception of the claimed inventions while employed at Queen's University.

In May 2002, Queen's University filed suit in Ontario, Canada against Varrin. In the Canadian suit, Queen's University seeks a declaration that if Varrin is the inventor of the inventions claimed in the 606 and 889 Patents, any of Varrin's rights in those patents belong to Queen's University or that, if Varrin has any rights in the patents, he holds such rights in trust for the sole benefit of Queen's University. In the Canadian action, Queen's University alleges that Varrin was a research assistant employed by Queen's University. That under the terms of his employment agreement, his job description and duties, and the Queen's University's polices that governed Varrin's employment, any rights Varrin has to any of the inventions belong to Queen's University and that Varrin was obligated to assign such rights to Queen's University.

Varrin presently seeks an order from this Court enjoining Queen's University from proceeding with its lawsuit in Canada.

2

Neither party disputes that this Court has the power to enjoin collateral lawsuits pending in foreign countries. *See Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 431 (7th Cir. 1993) (*Allendale*); *Philips Med. Sys. Int'l*, 8 F.3d 600, 604-05 (7th Cir. 1993) (*Philips*). Injunctions against foreign litigation are allowed "upon a finding that letting the two suits proceed would be gratuitously duplicative, or as the cases sometimes say 'vexatious and oppressive'". *Allendale*, 10 F.3d at 431. Included in this analysis, the court must weigh international comity. *See Allendale*, 10 F.3d at 431. "When every practical consideration supports the injunction, it is reasonable to ask the opponent for some indication that the issuance of an injunction really would throw a monkey wrench, however small, into the foreign relations of the United States." *Allendale*, 10 F.3d at 431.

In *Allendale*, an American insurance company insured a French corporation against property damage. After the French company's warehouse burned down, the parties sued one another in a United States District Court. Several months after the United States suits had been filed, the French company filed suit in France based on the same incident in the United States suit. The United States District Court Judge issued an injunction prohibiting the French company from proceeding with its case in France. *Allendale*, 10 F.3d at 427. The Seventh Circuit affirmed, noting that if the injunction had not been granted, the "parallel lawsuits would be proceeding full tilt in two tribunals 4,000 miles apart at the same time, entailing an absurd duplication of effort." *Allendale*, 10 F.3d at 430-31.

In the instant case, Varrin alleges that he is, at the minimum, one of the inventors of two United States patents that is licensed to American pharmaceutical companies. United State's patent law is applicable to Varrin's claims, and the American courts have an interest in deciding matters under United State's patent law.

3

Queen's University did not file any counterclaims in Varrin's suit. Instead, Queen's University filed suit in Canada, seeking a declaration that Queen's University is the rightful owner of all inventions made by Varrin while he was employed with Queen's University. The parties do not dispute that Queen's University's claims require the application of Canadian employment and common law. Queen's University concedes that its Canadian lawsuit would have an impact on the present suit.

Both inventorship and ownership of the United States patents are implicated in Varrin's suit. The core issue in the present suit is inventorship, and the defense to that claim is ownership. Queen's University's suit in Canada, claiming ownership of these same inventions, constitutes a compulsory counterclaim because it arises out of the same transaction or occurrence that is the subject matter of the instant suit - the invention and ownership of two United States patents while Varrin was in Queen's University's employ. *See* Fed. R. Civ. P. 13(a); *Nachtman v. Crucible Steel Co.*, 165 F.2d 997, 999 (3rd Cir. 1948) (ownership defense is a compulsory counterclaim in a suit for correction of inventorship).

However, neither this Court nor a Canadian court need decide the issue of ownership if Varrin is unable to prove his inventorship claim. Thus, the present suit may be dispositive of the Canadian suit. Allowing both suits to proceed would result in a duplication of efforts. Resolution in both courts could also result in inconsistent results. Furthermore, Queen's University has not made any indication that the issuance of an injunction "would throw a monkey wrench, however small, into the foreign relations of the United States" and Canada. *See, Allendale*, 10 F.3d at 431.

Based on the above, Queen's University's suit in Canada is gratuitously duplicative. Accordingly, Plaintiff's Motion to Enjoin Defendant Queen's University From Pursuing Collateral Proceedings is granted.

Dated: August 29, 2002

JOHN W. DARRAH
United States District Judge